IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| STEVEN NEUBERT, | * |
| | * |
| Plaintiff, | * |
| v. | * Civil No. 3:05-CV-0393-H |
| | * |
| MEDICAL ADMINISTRATOR, THE | * |
| UNIVERSITY OF TEXAS MEDICAL | * |
| BRANCH; STEVEN BOWERS; | * |
| BARRY RAFF; ANANDA BABBILI, | * |
| DEANNA FETNER; THE G.E.O. GROUP, | * |
| INC.; WARDEN D.G. MCCOMIS; | * |
| WARDEN D. FORREST; and | * |
| WARDEN MICHAEL RINGER, | * |
| | * |
| Defendants. | * |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants Bowers, Raff, and Babbili's Amended Motion for Summary Judgment, filed May 22, 2006; and Plaintiff's Response Addressing Defendants' Amended Motion, filed June 20, 2006[1]; and Plaintiff's Motion Requesting the Court to Rule on Defendant's Entitlement to Qualified Immunity, filed September 29, 2006.

For the reasons that follow, Defendants' motion is granted in its entirety. The remaining named Defendants are similarly dismissed from the case, and final judgment will issue.

---

[1] Plaintiff's Response incorporates by reference all of the materials he has previously filed in this case, including Plaintiff's Answer to Defendants' Motion for Summary Judgment, filed January 24, 2006; Plaintiff's Motion Showing Defendants Are Not entitled to Qualified Immunity, filed November 15, 2005; Plaintiff's Motion to Deny Defendants Qualified Immunity, filed August 31, 2005; Plaintiff's Second Supplemental Brief in Support of 42 U.S.C. § 1983, and Exhibits, filed August 31, 2005; Plaintiff's First Supplemental Brief and Exhibits, filed July 22, 2005; Plaintiff's Answers to Magistrate Judge's Questionnaire, filed April 15, 2005; and Brief in Support of 42 U.S.C. § 1983, and Exhibits, filed April 15, 2005.

## I. Background

Plaintiff *pro se* and *in forma pauperis* Steven Neubert brings this Section 1983 case for alleged constitutional violations during his incarceration in the Estes Unit of the Texas Department of Criminal Justice Correctional Institutions Division ["TDCJ-CID"]. *See* 42 U.S.C. § 1983. Plaintiff, who is a disabled military veteran, asserts that prison medical officers and wardens denied him medical care for knee, leg and foot problems, arthritis pain, and diabetes. He asks the Court for monetary damages, and for injunctive and declaratory relief.

As state officials, all of the Defendants who have so far appeared in the case assert defenses of sovereign immunity in their official capacities; and of qualified immunity in their individual capacities. On each of those grounds, the Court finds in Defendants' favor.

## II. Summary Judgment Standard

Summary judgment is appropriate where the facts and law as represented in the pleadings, affidavits and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact. FED. R. CIV. P. 56; *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Innovative Database Systs. v. Morales*, 990 F.2d 217 (5th Cir. 1993). The moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact; but is not required to negate elements of the nonmoving party's case. *Lynch Properties, Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322-25). If the movant fails to meet its initial burden, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant does meet its burden, the nonmovant must go beyond the pleadings and designate specific facts showing that a genuine issue of material fact exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998). A party opposing summary judgment may not rest on mere conclusory allegations or denials in its pleadings unsupported by specific facts presented in affidavits opposing the motion for summary judgment. FED. R. CIV. P. 56(e); *Lujan*, 497 U.S. at 888; *Hightower v. Texas Hosp. Assn.*, 65 F.3d 443, 447 (5th Cir. 1995).

In determining whether genuine issues of fact exist, "[f]actual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625; *see also Eastman Kodak v. Image Technical Services*, 504 U.S. 451 (1992). However, in the absence of any proof, the Court will not assume that the nonmoving party could or would prove the necessary facts. *Lynch*, 140 F.3d at 625. A party must do more than simply show some "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991).

### III. Analysis

To state a claim under Section 1983 of Title 42, United States Code, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). In this case, no party challenges that Defendants acted under color of state

3

law. Plaintiff sues for violation of his Eight Amendment right against cruel and unusual punishment. *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

    A.    <u>Injunctive Relief</u>

As a preliminary matter, the Court finds that regardless of the merits of the case, Plaintiff is not entitled to injunctive relief. On December 9, 2005, Plaintiff properly notified the district clerk of his change of address pursuant to release from prison. His release renders the claims for declaratory and injunctive relief moot. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (citing *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991)); *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988). Accordingly, those claims are dismissed.

    B.    <u>Official Capacity</u>

To the extent that each Defendant in this case is sued in an official capacity, he or she correctly pleads sovereign immunity. Under well-settled law, the Eleventh Amendment to the United States Constitution acts as an absolute bar to a Section 1983 claim against the state, and against an officer of the state sued in his or her official capacity. *See,* e.g., *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)*; Richardson v. Southern Univ.*, 118 F.3d 450, 452 (5th Cir. 1997), *cert. denied*, 522 U.S. 1078 (1998)*; Hill v. Dallas County Jail*, 2006 WL 785496, *2 (N.D. Tex. 2006).

By order of May 23, 2006, Defendant University of Texas Medical Branch and its administrator were dismissed from the case on sovereign immunity grounds. That the remaining Defendants are state officials is not in dispute. To the extent they have been sued in their official capacities, they are dismissed as well. *See Will*, 491 U.S. at 71. The Court turns to the real issue

presented for decision here, the question of liability of the remaining Defendants in their individual capacities.

    C.    <u>Medical Defendants</u>

The core Defendants in this case, Bowers, Raff, and Babbili, are medical officers who were responsible for Plaintiff's care in the Estate Unit of the TDCJ-CID. In the present motion for summary judgment, these Medical Defendants correctly assert qualified immunity as a complete defense to their individual liability for Plaintiff's Section 1983 claim.

Under well-established law, qualified immunity shields state officials from personal suits "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Federal courts review claims of qualified immunity under a two-step analysis. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). First, a court must determine whether the alleged facts, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. If the allegations do not establish the violation of a constitutional right, the officer is entitled to qualified immunity. *Id.* If the allegations make out a constitutional violation, the court must ask whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident. *Hare v. City of Corinth, Miss.*, 135 F.3d 320 (5th Cir. 1998) (en banc); *see Wilson v. Layne*, 526 U.S. 603, 614 (1999) ("Whether an official protected by qualified immunity may be held personally liable for an official action generally turns on the objective legal reasonableness of the action . . ..") (internal quotation marks and citations omitted).

5

In this case, the Court need not proceed past the first prong of the test. Denial of medical care to a prisoner is a constitutional violation only if it rises to the level of "deliberate indifference to the serious medical needs" of the prisoner. *Gregg v. Georgia*, 428 U.S. 153 173 (1976); *see Domino*, 239 F.3d at 755. Prison medical staff can be held liable only if they intentionally deny access to medical care, or intentionally delay such access with substantially harmful result. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). Under the facts here, Plaintiff has raised no inference of deliberate indifference on the part of the Medical Defendants.

To establish "deliberate indifference," a prisoner must show that an official (1) was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) actually drew the inference, or was deliberately blind to it; and (3) failed to take obvious steps to address the risk. *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 530 (5th Cir. 1994). Deliberate indifference describes a state of mind more blameworthy than mere negligence on the part of the medical officer. The standard is "stringent," requiring that a government actor have disregarded a known or obvious consequence of his or her action. *Board of the Cty Comm'ers of Bryan County, Okla. v. Brown*, 520 U.S. 397, 410 (1997); *see Domino*, 239 F.3d at 756 ("Deliberate indifference is an extremely high standard to meet.").

Deliberate indifference under the Eighth Amendment requires the same showing of "subjective recklessness" used in criminal law. *Farmer v. Brennan*, 511 U.S. 825 (1994). Mere negligence, gross negligence, or medical malpractice is not enough to meet the test. *Hare*, 74 F.3d at 645; *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1993) (citing *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979)). An incorrect diagnosis does not suffice. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show the officials "refused to treat him,

ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*.

Once a prisoner is evaluated, the decision whether to provide or to continue treatment is "a matter for medical judgment." *Estelle*, 429 U.S. at 107. The failure to alleviate a significant risk that an official should have perceived but did not is insufficient to create a cause of action. *Farmer*, 511 U.S. at 838. Medical records reflecting assessment and treatment of an inmate's medical complaints are strong evidence that deliberate indifference was not present. *See McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990). Mere delay in providing medical care does not give rise to a constitutional violation unless it results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

In this case, no genuine issue of a constitutional violation is raised. Although the Court does not intend in any way to denigrate the legitimacy of Plaintiff's medical conditions or of his chronic pain, the evidence, viewed in the light most favorable to him, ultimately reveals a classic example of minimal but legally sufficient prison care. That Plaintiff subjectively disagrees with the quality of his treatment, and with the timing of it, is not enough under the legal standard of this Circuit to support his claim. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

The gravamen of Plaintiff's complaint is that his bad legs and feet, his arthritis, and his diabetes went untreated, or were not timely treated, at the Estes Unit. He observes that his knees, in which he suffers a degenerative joint disease, make a "popping sound" when he walks or climbs stairs; and that he experiences extreme pain in the process. A disabled military veteran, Plaintiff has rods in both legs and suffers from "hammertoes." He complains that his request for special medical

7

boots was delayed for nine months, and that requests for a knee brace and cane went unheeded altogether. In addition, he asserts that his preferred and previously furnished pain medication of Naproxen was not prescribed. During the course of his incarceration at the Estes Unit, the Medical Defendants took away certain restrictions he had enjoyed elsewhere in the prison system, including "no climbing" and "bottom floor only" restrictions, although his "lower bunk" designation was maintained.

In response, the Medical Defendants assert, and the uncontroverted evidence[2] reveals, the following: The month after arriving at the Estes Unit, Plaintiff submitted a sick call request and was seen for foot and leg issues on June 28, 2004. App. at 8. Defendant Dr. Raff issued Neubert a soft shoe pass for thirty days on July 1, 2004, and on July 5, 2004, referred him to the Brace & Limb Clinic ["Clinic"] for evaluation. App. at 8, 15. In September 2004, Defendant Babbili continued Plaintiff's lower bunk assignment; gave him a four-hour work restriction; limited him to work not requiring safety boots; limited walking and squatting activities; and limited walking on uneven or wet surfaces. Bowers Aff. at 1. On January 24, 2005, Plaintiff was seen again in response to his complaint of pain in his right foot and left knee. App. at 22-23. Defendant Babbili's assessment on that date included slight obesity and degenerative joint disease. Babbili noted that Plaintiff was "awaiting prosthesis" and ordered a follow-up on the referral to the Clinic. App. at 22.

---

[2] As an alternative ground for this decision, the Court notes that Plaintiff's supporting documents, which are neither sworn nor attested under penalty of perjury, do not meet minimum evidentiary standards to fulfill Plaintiff's summary judgment burden. *See Lujan*, 497 U.S. at 888; *Hightower v. Texas Hosp. Assn.*, 65 F.3d 443, 447 (5th Cir. 1995); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir.1991); FED. R. EVID. 801, 802, 901; FED. R. CIV. P. 56(e); *see also Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (holding that even *pro se* litigants must abide by the federal rules governing summary judgment evidence). In the interest of justice, the materials have nevertheless been reviewed to the extent possible without medical expert assistance.

On January 26, 2005, Plaintiff was finally seen by a specialist, and medical boots were ordered. On February 23, 2005, a technician noted that the boots were fitted and functioning properly, and that Plaintiff had accepted them. On March 21, Plaintiff was again seen by Defendant Babbili, who gave him another assessment and ordered an x-ray, which revealed "arthritic change." Bowers Aff. at 1. Overall, as Defendant Bowers points out plausibly in his affidavit, the staff were attempting to balance Plaintiff's ambulation difficulties with the need for exercise mandated by the obesity and diabetes. Bowers Aff. at 2.

The voluminous medical record reflects throughout that Plaintiff was regularly evaluated and monitored by medical staff for his diabetes and hepatitis; and that either aspirin or ibuprofen or Tylenol were always made available to him for arthritis pain. Although Plaintiff maintains that he refused the Tylenol and ibuprofen on grounds that previous doctors had told him it was bad for his hepatic liver (*see* Plf. Ans to Mag., at 9A), Plaintiff points to no express contraindication for Tylenol or ibuprofen in his medical records prior to incarceration at the Estes Unit; and he provides no expert testimony to support his belief.

The delay of approximately six months between the time the Clinic referral was ordered and the time Plaintiff received his medical boots is a significant delay, during which Plaintiff had no appliance at all to assist him in walking or climbing. A jury might well find the medical staff to have been shamefully negligent with respect to that delay. Negligence, however, is not actionable under Section 1983. *See Hare*, 74 F.3d at 645. The regular medical evaluations negate any inference of blameworthy intent. Although Plaintiff documents pain (exacerbated by his refusal to accept some of the pain medications), he provides no evidence of measurable, lasting, substantial harm for which "mere delay" in treatment would justify recompense. *See Mendoza*, 989 F.2d at 195; *cf. Norton*, 122

9

F.3d at 291 (defining actionable pain as "unnecessary and wanton infliction of pain repugnant to the conscience of mankind").

In that respect, Plaintiff's reliance on the decision in *Sappington v. Ulrich* is inapposite. *See* 868 F. Supp. 194 (E.D. Tex. 1994). There, the plaintiff prisoner suffered multiple broken bones, which occurred in prison, which were acknowledged by the medical staff, and which were ignored and remained unset and untreated in any way for several months, by which time they had knit unevenly. *See id.* at 196-97, 199-200. Here, in contrast, Plaintiff was monitored on a regular basis for each of his ailments, was prescribed medication, was referred to a specialty clinic, was given some privileges (although denied others) to accommodate his disabilities, and ultimately received the medical boots he requested. That Plaintiff would have preferred the superior treatment that he has received elsewhere is understandable, but does not affect this disposition. *See Norton*, 122 F.3d at 291; *Mendoza*, 989 F.2d at 195.

No genuine issue of material fact supporting a constitutional violation is at issue here. *See* FED. R. CIV. P. 56. Accordingly, the Medical Defendants are entitled to the defense of qualified immunity, and they are dismissed.

D.   <u>Warden Defendants</u>

On May 15, 2006, Plaintiff was permitted to amend his Complaint to add G.E.O. Group, Inc. ["G.E.O."], Warden D.G. McComis, Warden D. Forrest, and Warden Michael Ringer [collectively, "Warden Defendants"] as Defendants. In the various materials filed with the Court, Plaintiff avers that G.E.O. is a management company that runs the Estes Unit; and that the other Defendants are wardens and supervisors of the Medical Defendants. On October 19, 2006, the Warden Defendants

filed their Answer, in which they assert official and qualified immunity and ask for dismissal of Plaintiff's claims.

Lawsuits brought under Section 1983 may not rest on a theory of *respondeat superior* or vicarious liability. *See Reimer v. Smith*, 663 F.2d 1316, 1323 (5th Cir. 1981). Instead, for liability to attach, one of two scenarios must be shown: (1) that the supervisory defendant is personally involved in the incidents underlying the claim; or (2) that a "causal connection" exists between the supervisor's personal act and the alleged constitutional violation. *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir. 1985) (citations omitted); *see also Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir. 1986) (noting that "failure to supervise" imposes Section 1983 liability only in cases of widespread deprivations).

Plaintiff's lawsuit rests solely on his medical claims. Because the Court has determined no underlying constitutional violation exists to support those claims, no cause of action can continue against a supervisor or supervisory company. *See, e.g., Cantu v. Rocha*, 77 F.3d 795, 807 (5th Cir. 1996) (requiring proximate causation of a constitutional violation for liability of a state official for negligence or gross negligence). The Warden Defendants' request for dismissal is therefore granted. *See* FED. R. CIV. P. 12(b)(6).

E.   Other Claims

In the materials filed on April 15, 2005, Plaintiff raises various causes of action in addition to his Section 1983 claim. *See* Plf. Brf. at 18-23. Each is subject to the same qualified immunity defense granted herein. *See Hall v. Thomas*, 190 F.3d 693 (5th Cir.1999) (Americans with Disabilities Act); *McGregor v. Louisiana State Univ. Bd. of Supervisors*, 3 F.3d 850 (5th Cir.1993)

11

(Rehabilitation Act); *Cantu v. Rocha*, 77 F.3d at 807 (gross negligence and negligent supervision). Accordingly, the additional claims cannot stand.

    F.    <u>Defendant Deanna Fetner</u>

Of the Defendants named in the caption of this case, only Defendant Deanna Fetner has not been either dismissed previously, or is not included above as either a Medical Defendant or a Warden Defendant. The reason is that she has neither been served nor appeared. On December 20, 2005, the Court issued an order, pursuant to rulings of the United States Magistrate Judge, for summons to issue as to Fetner, allegedly a former Estates Unit nurse. On January 9, 2006, summons was returned unexecuted, and Plaintiff has taken no further action to effect service. *See* FED. R. CIV. P. 4(m) (requiring service to be effected within 120 days). Accordingly, the Court is of the view that Defendant Fetner should be, and she is hereby, dismissed for want of prosecution. *See id*.

### IV. Conclusion

For reasons stated above, the motion for summary judgment of Defendants Bowers, Raff, and Babbili is **GRANTED**, and Plaintiff's complaint against them in their official and individual capacities is **DISMISSED WITH PREJUDICE**.

The request for dismissal of Defendants G.E.O, McComis, Forrest, and Ringer is **GRANTED**. Plaintiff's Complaint against them in both capacities is similarly **DISMISSED WITH PREJUDICE**.

Defendant Deanna Fetner is **DISMISSED** for want of prosecution.

All other pending motions are rendered **MOOT** by this Order. Final Judgment will issue separately.

SO ORDERED.

DATED: December 1, 2006.

_____
BAREFOOT SANDERS, SENIOR JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS